1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAMIEN MINNA,                          No.  2:21-cv-01329-DAD-CKD

12              Plaintiff,

13        v.                                ORDER DENYING DEFENDANTS'
                                            MOTION FOR SUMMARY JUDGMENT
14   LONDA RAE ROWLEY, et al.,              AND DISMISSING PLAINTIFF'S UNRUH
                                            ACT CLAIM
15              Defendants.
                                            (Doc. Nos. 34, 35)
16

17        This matter is before the court on the motion for summary judgment filed by defendants

18   on December 13, 2022.  (Doc. No. 34.)  On February 1, 2023, defendants' motion was taken

19   under submission on the papers.  (Doc. No. 39.)  For the reasons explained below, the court will

20   deny defendants' motion for summary judgment.

21                           **FACTUAL BACKGROUND**[1]

22        Plaintiff Damien Minna is a quadriplegic and relies on a wheelchair for mobility.  (PUF

23   ¶ 1.)  On March 31, 2021, plaintiff's wife made a hotel reservation online for herself and plaintiff

24   to stay at defendants' Mossbrae hotel in Dunsmuir, California that evening, while plaintiff was in

25   the area on business.  (PUF ¶¶ 2, 3; DUF ¶ 9.)  Defendants Londa Rae Rowley and Marc Joaquin

26

27   _____
     [1]  This factual background is undisputed, except where otherwise noted.  The court will cite to
28   plaintiff's response to defendants' undisputed facts (Doc. No. 36-1), referring to defendants'
     undisputed facts as "DUF" and plaintiff's undisputed facts as "PUF."

                                              1

1    Rowley own the Mossbrae hotel, which is a small boutique hotel in the old 1925 Jones building in

2    the historic district on Dunsmuir (the "hotel").  (DUF ¶¶ 1, 2.)  The hotel has only seven boutique

3    rooms; six of the rooms are upstairs and only one room, Room 7, is on the ground floor and is

4    purported to be the ADA-accessible room.  (DUF ¶ 3.)  Due to its small size, the hotel does not

5    have an elevator, and it was only required to have one ADA-accessible room, which is provided

6    on the ground floor.  (DUF ¶¶ 4, 6.)

7           Plaintiff's wife used the website booking.com to book the hotel's "Deluxe King Studio"

8    room, though the parties dispute whether that website's description of that room states that it is on

9    the second floor and is only accessible by stairs. (DUF ¶ 9.)  Plaintiff and his wife arrived at the

10   hotel late in the evening on March 31, 2021.  (DUF ¶ 10; PUF ¶ 5.)  When they sought to check

11   in, defendant Londa Rowley told them that they had reserved a specific room on the second floor,

12   which was only accessible by stairs.  (DUF ¶ 10; PUF ¶ 5.)  Defendant Londa Rowley told

13   plaintiff that the hotel does have an ADA-accessible room (Room 7), but they did not reserve that

14   room and it was occupied by another visitor.  (DUF ¶ 10.)  Although plaintiff's wife's reservation

15   was non-refundable, as clearly stated on the booking.com website for all of the hotel's rooms,

16   defendant Londa Rowley did not charge plaintiff's wife's credit card and apologized that she

17   could not provide them with an ADA room because it was rented to another guest with mobility

18   restrictions.  (DUF ¶ 11.)  Plaintiff and his wife left the hotel, without ever entering or seeing

19   Room 7.  (DUF ¶¶ 11, 12.)

20          Plaintiff lives in Orange County, California, approximately 630 miles south of Dunsmuir.

21   (DUF ¶¶ 13, 24.)  Plaintiff had never been to Dunsmuir before March 23, 2021 and had never

22   stayed at the hotel.  (DUF ¶¶ 14, 23.)

23          On June 7, 2021, an investigator for plaintiff's counsel went to the hotel, investigated

24   Room 7, took various measurements, and identified purported accessibility barriers for

25   wheelchair uses in that room.  (PUF ¶¶ 7–12.)  Plaintiff was later informed that Room 7 does not

26   (allegedly) comply with ADA standards.  (PUF ¶ 13.)  According to plaintiff, he would like to

27   patronize this hotel whenever he is in town again for business, and he would also like to return to

28   confirm that the hotel complies with disability access laws so that a similar incident does not

2

1  happen to him or another disabled patron in the future.  (PUF ¶ 14.)  In addition, according to

2  plaintiff, he is currently deterred from returning to the hotel based on his knowledge that the hotel

3  is still inaccessible.  (*Id.*)

4       On July 29, 2021, plaintiff filed a complaint initiating this action against defendants (Doc.

5  No. 1), and on December 30, 2021, plaintiff filed the operative first amended complaint ("FAC")

6  (Doc. No. 13).  In his FAC, plaintiff asserts a claim under the Americans with Disabilities Act

7  ("ADA") and California's Unruh Civil Rights Act ("the Unruh Act").  (Doc. No. 13.)

8       On December 13, 2022, defendants filed the pending motion for summary judgment as to

9  both claims, arguing that defendants lack standing under Article III, the ADA, and the Unruh Act.

10  (Doc. No. 34.)  On December 27, 2022, plaintiff filed an opposition to the pending motion, and

11  on January 5, 2023, defendants filed a reply thereto.  (Doc. Nos. 36, 37.)

12                              **LEGAL STANDARD**

13  **A.    Summary Judgment**

14       Summary judgment is appropriate when the moving party "shows that there is no genuine

15  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

16  Civ. P. 56(a).

17       In summary judgment practice, the moving party "initially bears the burden of proving the

18  absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

19  (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party

20  may accomplish this by "citing to particular parts of materials in the record, including

21  depositions, documents, electronically stored information, affidavits or declarations, stipulations

22  (including those made for purposes of the motion only), admissions, interrogatory answers, or

23  other materials," or by showing that such materials "do not establish the absence or presence of a

24  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

25  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, as

26  plaintiff does here, "the moving party need only prove that there is an absence of evidence to

27  support the non-moving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at

28  325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

1    adequate time for discovery and upon motion, against a party who fails to make a showing

2    sufficient to establish the existence of an element essential to that party's case, and on which that

3    party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

4    proof concerning an essential element of the nonmoving party's case necessarily renders all other

5    facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

6    "so long as whatever is before the district court demonstrates that the standard for the entry of

7    summary judgment . . . is satisfied." *Id.* at 323.

8           If the moving party meets its initial responsibility, the burden then shifts to the opposing

9    party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

10    *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

11    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

12    of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

13    admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ.

14    P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773

15    (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for

16    summary judgment."). The opposing party must demonstrate that the fact in contention is

17    material, i.e., a fact that might affect the outcome of the suit under the governing law, *see*

18    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

19    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

20    evidence is such that a reasonable jury could return a verdict for the non-moving party, *see*

21    *Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

22           In the endeavor to establish the existence of a factual dispute, the opposing party need not

23    establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

24    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25    trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

26    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

27    *Matsushita*, 475 U.S. at 587 (citations omitted).

28    /////

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**B.      Standing under Article III and the ADA**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  To satisfy the case or controversy requirement, a plaintiff must show that he has suffered an injury-in-fact that is concrete and particularized; that the injury is traceable to the challenged action of the defendant; and that the injury is likely to be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "To confer standing, an injury in fact must be concrete, particularized, and actual or imminent, not hypothetical." *Langer v. Kiser*, — F.4th —, —, 2023 WL 353215 at *4 (9th Cir. 2023) (citing *Lujan*, 504 U.S. at 561).

"In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (footnote and citation omitted).

Under the Ninth Circuit's deterrent effect doctrine, a plaintiff may "establish actual or imminent injury for purposes of standing" to bring an ADA claim against a place of public accommodation if the plaintiff has actual knowledge of accessibility barriers and is "currently deterred" from visiting that place of public accommodation because of those barriers. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137–38 (9th Cir. 2002); *Langer*, 2023 WL 353215

at *4 (noting that in *Pickern*, the court "confirmed that a person with a disability need not engage in the 'futile gesture' of trying to access a noncompliant place just to create an injury for standing"). "An ADA plaintiff who has encountered or has personal knowledge of at least one barrier related to his or her disability when he or she files a complaint, and who has been deterred from attempting to gain access to the public accommodation because of that barrier, has suffered an injury in fact for the purpose of Article III." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (citing *Pickern*, 293 F.3d at 1138). The Ninth Circuit has clarified that a "personal encounter" with a barrier is not required; "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.* ("*CREEC*"), 867 F.3d 1093, 1099–1100 (9th Cir. 2017) (rejecting the defendant's "invitation to create a bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under ADA Title III"). In *CREEC*, the Ninth Circuit held that the named plaintiffs had ADA standing under the deterrent effect doctrine, even though they never visited the defendant's hotels, because they had telephoned the hotels and learned that the hotels offered shuttle transportation for guests but did not provide wheelchair-accessible transportation for guests who use wheelchairs. *CREEC*, 867 F.3d at 1096–1101.

In addition, in order to establish standing, a plaintiff must sufficiently describe the accessibility barriers and how those barriers relate to their particular disability. *Chapman*, 631 F.3d at 955 (vacating "the district court's grant of summary judgment and remand[ing] with instructions to dismiss [the plaintiff's] ADA claim for lack of jurisdiction" because the plaintiff did "not even attempt to relate the alleged violations to his disability"). A plaintiff "lacks standing if he is indifferent to returning to the [place of public accommodation] or if his intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." *Id.* at 953.

"[A] plaintiff's motivation for visiting a place of public accommodation is 'irrelevant to the question of standing.'" *Langer*, 2023 WL 353215 at *5 (quoting *CREEC*, 867 F.3d at 1101). Thus, plaintiffs who are motivated to visit places of public accommodation for the purpose of testing for ADA compliance (so-called "ADA testers" or "serial litigants") may nevertheless

1    establish standing.  *CREEC*, 867 F.3d at 1101–02.  Recently, in *Langer*, the Ninth Circuit

2    confirmed that "[b]eing an ADA tester is, in fact, a legitimate reason to go to a business," and the

3    panel "expressly reject[ed] the 'Harris test' relied upon by [] district court[s] in the circuit that

4    attempts to measure the legitimacy of a plaintiff's intent to return by considering factors such as

5    the plaintiff's 'past patronage of defendant's business.'"  *Langer*, 2023 WL 353215 at *7

6    (rejecting *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005); *Harris v.*

7    *Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, 1216 (S.D. Cal. 2007)).

8                                              **ANALYSIS**

9          Defendants move for summary judgment as to both of plaintiff's claims on the grounds

10   that plaintiff lacks standing under Article III, the ADA, and the Unruh Act.  (Doc. No. 34-1.)

11   Defendants' motion does not address the substantive merits of plaintiff's claims.

12   **A.      Whether Plaintiff Lacks Standing for His ADA Claim**

13         In their motion, defendants first argue that plaintiff lacks standing because he never

14   encountered any barriers at the hotel, and thus, he did not suffer an injury-in-fact as required for

15   Article III standing.  (Doc. No. 34-1 at 11.)  Although there is no genuine dispute of material fact

16   that the only accessibility barriers alleged by plaintiff are those inside Room 7 and that plaintiff

17   has never entered Room 7, these facts alone are insufficient to establish that plaintiff lacks

18   standing to bring his ADA claim.  Under binding Ninth Circuit precedent and contrary to

19   defendants' argument, a plaintiff need not personally encounter accessibility barriers to have

20   standing.  *See CREEC*, 867 F.3d at 1099–1100 (9th Cir. 2017) (rejecting the defendant's

21   "invitation to create a bright-line predicate of a 'personal encounter' with a barrier to access as a

22   requirement for standing under ADA Title III").  The undisputed fact that plaintiff did not

23   encounter the alleged accessibility barriers in Room 7 does not simply end the standing inquiry as

24   defendants suggest in their motion.  It is also undisputed that after plaintiff's visit to the hotel, on

25   June 7, 2021, an investigator hired by plaintiff's counsel went to the hotel and identified several

26   purported accessibility barriers in Room 7, and those are the barriers described in plaintiff's

27   complaint.  (*See* Doc. No. 13 at 3–4.)  It is further undisputed that plaintiff was informed that

28   /////

                                                    7

Room 7 (allegedly) does not comply with the ADA standards.[2]  Thus, there is no genuine dispute of material fact that plaintiff was aware of the alleged accessibility barriers when he filed his original complaint on July 29, 2021 and the operative first amended complaint on December 30, 2021.[3]  Plaintiff has submitted evidence in the form of his declaration, in which he declares that he is currently deterred from returning to the hotel due to the knowledge that Room 7 is still (allegedly) inaccessible.  These facts are sufficient to rebut defendants' argument that plaintiff lacked actual knowledge of the barriers.  *See CREEC*, 867 F.3d at 1099 ("It is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative."); *see also Doran*, 524 F.3d at 1042 ("Once a disabled individual has encountered *or become aware of* alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III to bring his claim for injunctive relief forward.") (citing *Lujan,* 504 U.S. at 560–61) (emphasis added).

Second, defendants argue that plaintiff has not made an adequate showing supported by credible evidence of his intent to return to the hotel, in light of the undisputed facts that he has no ties to the Dunsmuir area where the hotel is located, he lives over 600 miles from Dunsmuir, he went to the hotel for the purpose of checking on its ADA compliance, and he has not been back to

---

[2]  The parties dispute whether Room 7 in fact complies with the ADA, but that factual dispute is not material to the standing challenge advanced by defendants in their pending motion.

[3]  In their reply, defendants argue that to satisfy his deterrence theory, plaintiff had to have been aware of the alleged accessibility barriers at the time of his visit in March 2021 and that his subsequent learning of those alleged barriers is insufficient.  (Doc. No. 37 at 3.)  Defendants' argument is misplaced, however, because "the proper focus in determining jurisdiction are the facts existing at the time the complaint *under consideration* was filed," *CREEC*, 867 F.3d at 1102, not the facts existing on the day of the alleged violation.  *See Gastelum v. TJX Cos., Inc.*, No. 21-cv-06714-VKD, 2023 WL 411345, at *6 (N.D. Cal. Jan. 25, 2023) (finding that the plaintiff had alleged standing based on allegations in his amended complaint even though those allegations "might be viewed as an attempt to retroactively create standing based on facts that did not exist at the time [plaintiff] commenced this action").  Moreover, "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues."  *Pickern*, 293 F.3d 1137.

1   Dunsmuir since his sole visit in March 2021.  (Doc. No. 34-1 at 12–13.)  Defendants argue that

2   plaintiff has provided no facts or evidence of any *bona fide* intent to return the hotel or the

3   Dunsmuir area.  (Doc. No. 37.)  Defendants emphasize that plaintiff is an ADA tester plaintiff,

4   having filed twelve ADA lawsuits in the past several years, and that plaintiff's visit to the hotel

5   was motivated by his desire to "assess ADA compliance for yet another lawsuit."  (*Id.* at 6, 13.)

6   In support of their pending motion for summary judgment, defendants filed a request for judicial

7   notice of the dockets from plaintiff's other ADA lawsuits.  (Doc. No. 35.)  Defendants point to

8   this evidence as an indication that plaintiff's declared intent to return to the hotel is not credible or

9   genuine.  (Doc. No. 34-1 at 6, 12–13.)  However, the Ninth Circuit has made crystal clear that a

10  plaintiff's motivation in visiting a place of public accommodation is *irrelevant* to the question of

11  standing—even when the plaintiff is motivated by a desire to identify ADA violations and initiate

12  lawsuits.  *See Langer*, 2023 WL 353215 at *5; *CREEC*, 867 F.3d at 1101.  Indeed, the Ninth

13  Circuit has "instructed district courts not to question an ADA plaintiff's standing simply because

14  they file numerous ADA lawsuits or are an ADA tester."  *Langer*, 2023 WL 353215 at *9.

15  Accordingly, the court will deny defendants' request for judicial notice because the documents

16  that defendants request be judicially noticed are irrelevant to the pending motion, which only

17  challenges plaintiff's standing.

18      In support of his opposition to the pending motion for summary judgment, plaintiff

19  submitted his declaration, in which he declares that:

20      I would like to patronize this Hotel whenever I am in town again for
        business.  I would also like to return to confirm the Hotel now
21      complies with access laws so that a similar incident does not
        happen to me or another disabled patron in the future.  However, I
22      am currently deterred from returning right now knowing that the
        Hotel is still inaccessible.
23

24  (Doc. No. 36-2 at ¶ 9.)  Plaintiff does not describe in his declaration what his business is or when

25  he might be "in town again for business."  Defendants argue that "'some day' intentions—without

26  any description of concrete plans, or indeed even any specification of *when* the some day will

27  be—do not support a finding of the 'actual or imminent' injury" that is required for standing.

28  (Doc. No. 34-1 at 13) (quoting *Lujan*, 504 U.S. at 564).  Defendants' argument in this regard as to

1   plaintiff's stated intent to return to the hotel whenever he is in town again for business is well

2   taken because plaintiff had not traveled to the Dunsmuir area on business prior to his only trip

3   there in March 2021, and plaintiff's declaration is utterly lacking any description or factual

4   support showing why plaintiff would anticipate ever being in Dunsmuir for business again.  But

5   defendants do not address plaintiff's other asserted basis underlying his intent to return to the

6   hotel.  That is, plaintiff has also declared that he would like to return to the hotel to confirm ADA

7   compliance, but he is currently deterred from doing so because, according to him, the hotel is still

8   inaccessible.  Again, according to binding Ninth Circuit precedent (which defendants do not

9   acknowledge or address), a plaintiff's intent to return may be based upon a desire to confirm

10  ADA compliance.  *See Langer*, 2023 WL 353215 at *7 ("Being an ADA tester is, in fact, a

11  legitimate reason to go to a business," and "[t]here is no past patronage or *bona fide* customer

12  requirement to bring an ADA claim."); *see also D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d

13  1031, 1037, 1040 (9th Cir. 2008) (rejecting the district court's "purported adverse credibility

14  determination" "because the district court focused on [plaintiff's] history of ADA litigation as a

15  basis for questioning the sincerity of her intent to return to the [hotel]").

16       With respect to whether plaintiff is ultimately credible and whether his intent to return for

17  the purpose of assessing the hotel's ADA compliance is genuine, these not issues raised by the

18  pending motion and would not be questions properly resolved by the court on summary judgment.

19  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630 ("[A]t this [summary judgment] stage of the litigation,

20  the judge does not weigh conflicting evidence with respect to a disputed material fact.  Nor does

21  the judge make credibility determinations with respect to statements made in affidavits, answers

22  to interrogatories, admissions, or depositions.").

23       For these reasons, defendants' motion for summary judgment in their favor as to

24  plaintiff's ADA claim will be denied.  To be clear, the court is not determining at this stage that

25  plaintiff in fact has standing to maintain his ADA claim, as that determination turns on the

26  credibility and the weighing of evidence, which are not evaluated by the court at the summary

27  judgment stage.  Rather, the court concludes that defendants have not established that plaintiff

28  lacks standing under Article III and the ADA.  The court notes that defendants' failure in this

1    regard appears to be due in large part to their misunderstanding of the applicable legal standards

2    (e.g., believing that personal encounters of barriers is required) and their lack of awareness of

3    recent developments in Ninth Circuit authority addressing ADA standing issues (e.g., believing

4    that a plaintiff's ADA litigation history is relevant and casts doubt on a plaintiff's credibility).

5    **B.      Plaintiff's Unruh Act Claim**

6           In the pending motion, defendants also argue that because plaintiff lacks standing to bring

7    his ADA claim, he also lacks standing to bring his Unruh Act claim, which is predicated on the

8    alleged ADA violation.  (Doc. No. 34-1 at 13–15.)  In addition, defendants argue that plaintiff

9    failed to comply with the heightened pleading standards for disability discrimination lawsuits

10   brought under the Unruh Act, which are required by California Code of Civil Procedure § 425.50

11   and which are applied in California state courts.  (*Id.*)  Plaintiff does not address this latter

12   argument in his opposition.  In their reply, defendants note that rather than address their standing

13   arguments as to plaintiff's Unruh Act claim, the court may instead decline to exercise

14   supplemental jurisdiction over plaintiff's Unruh Act claim.  (Doc. No. 37 at 5.)

15          Declining to exercise supplemental jurisdiction over plaintiff's Unruh Act claim here,

16   where the court has not yet determined the merits of plaintiff's ADA claim, would be appropriate

17   and consistent with recent Ninth Circuit authority on this issue.  *See* 28 U.S.C. § 1367(c)(4) ("The

18   district courts may decline to exercise supplemental jurisdiction over a claim [] if . . . in

19   exceptional circumstances, there are other compelling reasons for declining jurisdiction.")  In

20   particular, in *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021), the Ninth Circuit described in detail

21   the "backdrop of recent changes in California law governing Unruh Act claims," and the fact that

22   the California Legislature "imposed additional procedural requirements on 'construction-related

23   accessibility claims' in order to address what it believed was continued abuse by 'high-frequency

24   litigant[s].'"  *Arroyo*, 19 F.4th at 1207 (quoting Cal. Civ. Proc. Code § 425.55(a)(2), (b)).  The

25   court explained that because "the significant expense and burden of California's newly imposed

26   rules . . . can be avoided by pairing the Unruh Act claim with a parallel federal ADA claim and

27   then filing the suit in federal court," there has been a sharp increase in the number of ADA

28   lawsuits filed in federal courts in California.  *Id.* (noting that the percentage of civil actions filed

1   in the Central District of California that were brought under the ADA increased in 2018 and 2019

2   from 3% to 22% of all civil actions).  The panel concluded that "the procedural strictures that

3   California put in place have been rendered largely toothless, because they can now be readily

4   evaded."  *Id.* at 1213.  The court further concluded that these circumstances are "exceptional."  *Id.*

5   Thus, in *Arroyo* the Ninth Circuit "ha[d] little difficulty concluding that the district court did not

6   abuse its discretion in concluding that the situation presented here involves 'exceptional

7   circumstances' within the meaning of § 1367(c)(4)."  *Id.* at 1214.

8          Indeed, district courts who have addressed this issue post-*Arroyo* have declined to

9   exercise supplemental jurisdiction over Unruh Act claims where the litigation is not in the very

10  late stages and where the courts have not yet addressed or ruled on the merits of the ADA claim.

11  *See Garcia v. Maciel*, No. 21-cv-03743-JCS, 2022 WL 395316, at *5 (N.D. Cal. Feb. 9, 2022)

12  (collecting cases); *see also Vo v. Choi*, 49 F.4th 1167, 1172 (9th Cir. 2022) (affirming a district

13  court's order declining to exercise supplemental jurisdiction over an Unruh Act claim because

14  "[t]he district court here declined supplemental jurisdiction over [plaintiff's] Unruh Act claim

15  well before it ruled on the merits of the ADA claim"); *cf. Whitaker v. Reeder*, No. 20-55358,

16  2022 WL 2115045, at *1 (9th Cir. June 13, 2022) (reversing the district court's decision to

17  decline the exercise of supplemental jurisdiction over the plaintiff's Unruh claim because it did

18  not do so "until it had ruled on the merits of the ADA claim" and "[g]iven this timing, the values

19  of judicial economy and convenience favor retaining jurisdiction over the claim, and the concerns

20  of comity could not be properly addressed at the late stage of litigation").

21         For these reasons, and consistent with the Ninth Circuit's decision in *Arroyo*, the court

22  declines to exercise supplemental jurisdiction over plaintiff's Unruh Act claim in this action.  *See*

23  *Garcia*, 2022 WL 395316, at *5 ("Under the circumstances of this case, which has not progressed

24  beyond threshold questions of standing and jurisdiction, the strong comity concerns identified by

25  the Ninth Circuit in *Arroyo* outweigh any countervailing considerations of economy and

26  efficiency that might be adversely affected by requiring [plaintiff] to refile his Unruh Act claim in

27  state court.").  Therefore, the court will dismiss plaintiff's Unruh Act claim, without prejudice to

28  plaintiff refiling that claim in state court.  As a result of this determination, the court need not

address the parties' arguments with regard to whether plaintiff had established standing to maintain his Unruh Act claim.

### CONCLUSION

For the reasons set forth above,

1.      Defendants' motion for summary judgment (Doc. No. 34) is denied;

2.      Defendants' request for judicial notice (Doc. No. 35) is denied;

3.      Pursuant to 28 U.S.C. § 1367(c)(4), the court declines to exercise supplemental jurisdiction over plaintiff's Unruh Act claim; and

4.      Plaintiff's Unruh Act claims is dismissed without prejudice to plaintiff refiling that claim in state court.

IT IS SO ORDERED.

Dated:   **February 1, 2023**                               *Dale A. Drozd*
                                                                          UNITED STATES DISTRICT JUDGE